# Dietz *versus* Langfitt.

1. All homicides are presumably unlawful.

2. The fact that a homicide has been committed is probable cause for commencing a prosecution against the perpetrator.

3. In action for malicious prosecution for instituting a charge of homicide, evidence that the prosecutor stated before the grand jury that as the coroner's inquest had found the killing to be accidental he did not wish to prosecute further, was proper on the question of malice.

4. A child was run over by a street car and killed. Dietz, the uncle of the child, made information against the driver. The magistrate said to Dietz that the father was the proper person to make the information; but Dietz insisted on making it, as the father was too much excited. The judge stated this to the jury, and added, "Was this sufficient justification in this case? If it was, then the plaintiff cannot recover." *Held* to be error, as leaving it to be inferred by the jury that if they thought it was not a justification the plaintiff might recover.

5. It is the duty of every citizen to procure a warrant where there is good reason to believe that a high crime has been committed.

6. A plaintiff in an action for malicious prosecution must establish both malice and want of probable cause.

7. Malice may sometimes be inferred from want of probable cause, where there is nothing to rebut the inference; but this is the inference of a fact.

8. Where there is probable cause, it is not material whether the prosecutor be actuated by malice or not.

9. In an action for malicious prosecution, the judge charged, "It is not necessary the defendant should have malice towards the particular person, but malice is a disregard of what a man owes to society." *Held* to be error.

10. What is probable cause, and whether it exists in the proof, if believed, is a question of law; whether the proof establishes it is for the jury.

November 12th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 133, to October and November Term 1869.

This was an action on the case brought July 15th 1867, by John Langfitt against Jacob Dietz. The cause of action was malicious prosecution.

The plaintiff was the driver of a street passenger car. On the 6th of April 1867, whilst driving through the streets of Lawrence-

[Dietz *v.* Langfitt.]

ville, his car ran over Adam Boust, a child of George Boust, and about two years and a half old. The child was crushed and mangled, and died in about forty minutes after the accident. The defendant, Dietz, was the uncle of the child, but had not seen the accident when it occurred. After going to the house of the child's father, and seeing the condition of the child, he went to the office of William Jancey, a justice of the peace in Lawrenceville and made information against Langfitt, under which he was committed to prison, and remained there from Saturday until Monday, when he was discharged on bail. At the next Court of Quarter Sessions a bill against Langfitt sent to the grand jury, was returned "ignoramus," and Langfitt finally discharged. He then brought this action.

The foregoing facts appeared on the trial, June 3d 1869, before Kirkpatrick, J. The plaintiff in addition gave in evidence the information made before Esquire Jancey, viz. :

" Jacob Dietz, of the borough of Lawrenceville, in said county, storekeeper, being duly sworn, saith that a certain person named John Langfitt, driver of No. 31 Citizens Passenger Railway car, did wilfully, and wickedly, and carelessly, on the 6th day of April, A. D. 1867, drive over a child aged three years, belonging to George Boust, in the borough of Lawrenceville.

" Defendant asks that a warrant may be issued for the arrest of the said John Langfitt, car driver, and that he be held to answer the charge of careless driving on said road, causing the death of Adam Boust."

Esquire Jancey testified that the defendant came to his office, stated that the driver of a passenger car had run over a child of George Boust, and he, the defendant, wanted to make information. The witness asked where the father was, defendant said he was too excited to come; witness told him it would be better for the father to make it; defendant still stated the father was too much excited to come.

The plaintiff testified that whilst driving, he was looking straight ahead, and saw something on the other side of the car, as the car passed over ; it was something very soft, he did not know what it was; he stopped and did not see any thing till the child was picked up. There was much evidence on both sides as to the circumstances of the accident and on the question of carelessness on the part of the plaintiff; also as to requests by the father of the child and others who were at the house, to the defendant to make the information against the plaintiff.

The defendant being under examination as a witness, it was proposed to prove by him that he went before the grand jury and stated to them that as the coroner's jury had found that the killing of the child was an accident, he did not wish to prosecute the

[Dietz *v.* Langfitt.]

case any farther. The offer was objected to by the plaintiff, rejected by the court, and a bill of exceptions was sealed.

The court charged:— * *

"The law presumes every public prosecution for crime to be commenced and carried on for the public good, and without malice in the prosecutor, and with reasonable and probable cause—that is the presumption of the law. That is, the plaintiff in an action of this kind must prove that the defendant had no reasonable cause to believe him guilty of the crime charged, and that in commencing and carrying on the prosecution he was actuated by malice. What constitutes reasonable or probable cause, does not depend upon the actual guilt of the party charged, but an honest and reasonable belief of the prosecutor. It is not in this case whether John W. Langfitt was or was not guilty of the crime of murder or manslaughter, or careless driving over this child, but what was the belief of Dietz at the time he made the charge. This is the point in the case around which all centres. A man has no right to go before a magistrate and make a charge without cause, for a man's reputation is dearer than his life. A man should consider and act as a cautious man would. I do not wish to express any opinion in regard to the conduct of Dietz, but had he reasonable and probable cause to charge Langfitt with whatever you may find that information charges him with? This does not depend upon the actual guilt of the party charged, but has he cause for reasonable belief? It has been defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man to believe that the party is guilty of the offence.

"Was there in the facts connected with the making of this information sufficient grounds to warrant a cautious man, a man even of ordinary prudence, in believing that John W. Langfitt was guilty of either murder or manslaughter, or carelessly and maliciously running over this child? If there was, he is acquitted in this case, and the plaintiff cannot recover. If not, he is liable in damages, and should respond in such an amount as you, as conscientious men, as jurors, think you ought to impose upon him.

"It is not necessary for him to be guilty. Were there such suspicious circumstances as would induce a man of ordinary caution and prudence to make this arrest? I will allude to what transpired at the magistrate's office. It would seem that Squire Jancey thought the father to be the proper person to make the information. [The answer Dietz gave, was, that the father had the child, and was too much excited to make the information against Langfitt. Was that sufficient justification in this case?] If it was, then Dietz is not liable, and the plaintiff cannot recover in this suit. There are other witnesses that make other statements. The substance of all the definitions is reasonable ground

[Dietz v. Langfitt.]

for belief of guilt. It can make no difference what induced the belief of guilt, if it be reasonably sufficient. On the other hand, citizens are to protect the public, and the court shall not frown upon honest efforts to bring the guilty party to justice. Was Dietz, in making this information, actuated by an honest and sincere desire to bring this man to justice? That is the question for you to determine. [If you think he was actuated by malice, or want of probable cause, then the plaintiff is entitled to recover in such amount as you deem proper.] [Let me suggest in regard to malice. It is not necessary that he should have malice toward the particular party, but malice is disregard to what a man owes to society.]

"Let us inquire what is meant by malice in an action of this kind. Want of probable cause is evidence of malice, but it is not malice itself. So, your inquiry will be—under all the circumstances of the case—the suddenness of the accident, the excitement of the moment, the assertions of the bystanders, the request of the father or mother, or both, whether it was such a suggestion as would have induced a cautious, prudent man to have gone to the magistrate and charged a man either with murder or manslaughter, or the crime that it is claimed he did charge him with. Would you have done that, you, as jurors, who the law says, are the best illustration to define a prudent man, would you, related as Dietz was by the ties of blood to this child, would you have gone under the circumstances—would any man, a cautious man, a man of ordinary prudence, have gone off and made a charge of this kind against a fellow-citizen? If you think you would,—if you think the circumstances would warrant a man of ordinary caution in doing it, then Dietz had the right to do it, and your verdict will be for the defendant. [If you think the conduct of Dietz is unwarranted; that he had not probable cause; that he was actuated by malice, or if *without malice*, without cause and justification, then Dietz is to blame, and should respond to damages.] And touching damages—if you should go so far as that —I have only to say, that your justice should be tempered by mercy, and you should render such a verdict as would deter him and others from repeating an action of this kind."

The verdict was for the plaintiff for $225. The defendant took a writ of error and assigned the following errors:—

1. The rejection of his offer of evidence.

3, 4, 5 and 6. The several parts of the charge included in brackets in their order.

*Howard & Shaffer*, for the plaintiff in error, cited Le Maistre *v.* Hunter, Brightly's R. 496.

*T. M. Marshall* cited Schofield *v.* Ferrers, 11 Wright 197; Smith *v.* Ege, 2 P. F. Smith 421.

[Dietz *v.* Langfitt.]

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—It is somewhat difficult in view of the facts of this case, to restrain an expression of surprise, if nothing more, at the result of the trial below. The action was for malicious prosecution, the facts relating to which are few, and easily stated.

The plaintiff below was the driver and conductor of a passenger railway car, and was driving through the borough of Lawrenceville, Allegheny county, on the 6th of April 1867, when, about noon of that day, he drove over and killed an infant aged about two and a half years, child of one George Boust, a citizen of the town. The defendant was the uncle of the deceased, and hearing of the accident went at once to the house of Boust, and finding the child crushed and at the point of death, proceeded, at the request of its parents and others present, to the office of a magistrate and procured a warrant for the arrest of the plaintiff on information made by himself, charging him with wilfully, wickedly, and carelessly driving over the child, and procured a warrant for his arrest for killing the child. The child lived some forty minutes after being run over and then expired. When the plaintiff was brought up, the child being dead, the magistrate refused bail and committed him. This was on Saturday, and he remained in jail till Monday. In the meantime a coroner's inquest had been held, and the jury found that the killing was accidental. In consequence of this he was admitted to bail for his appearance at court. At the ensuing term the case was sent to the grand jury, and the bill for murder, or perhaps manslaughter, was ignored. It is nowhere stated what the nature of the bill was; but it must have been for one or other of these offences, or both.

The plaintiff gave in evidence the bill of indictment to show the action of the grand jury upon it. This was a necessary part of his case. The defendant in order to show how this came about, and that he had no malice towards the plaintiff, which might have been an inference from the *ignoramus* of the bill, proposed to prove by the defendant on the stand, the only witness before the grand jury—"that he stated to them that as the coroner's inquest had found the killing had been accidental, he did not wish to prosecute further." The offer was rejected by the court. In considering this exception we must take the fact as true, and we may take it as true in stating the circumstances of the case. Under this state of facts, and notwithstanding the child was killed by the driving of the plaintiff in broad daylight in an open street, and notwithstanding the entire absence of express malice on part of the defendant, the jury rendered a verdict for the plaintiff of $225 and costs. Almost anybody would be ready to conclude that such a result must have had the aid of error somewhere. I presume it is the first time in the history of judicial proceedings

[Dietz *v.* Langfitt.]

that a prosecution for a homicide, unmistakably committed, begun before it could be known whether it was wilful, negligent or accidental, the prosecutor was ever punished for putting the law in motion to ascertain whether there was guilt in it or not. As all homicides are presumably unlawful, the fact of itself is probable cause for proceeding against the perpetrator. But I will proceed with the assignments of error.

The first is the ruling of the learned judge in rejecting the offer of testimony as above stated. Wherefore should it have been rejected? The witness was competent, the facts were not privileged from disclosure by the witness, and on the defendant's theory of his case in regard to malice, it was most material to the defence. There being, therefore, nothing like a good objection to it, it was clearly error to reject it, and the error is sustained.

The next assignment to be considered is the third (the second being totally defective and not to be noticed), and that relates to the remark of the learned judge about what transpired at the magistrate's office when the defendant applied for a warrant. I will give the whole of the remarks as to that matter, a part only of which is assigned for error, in order that we may more clearly see the force of it. "It would seem," said the judge,—"that 'Squire Jancey thought the father ought to be the proper person to make the information. The answer Dietz gave was, that the father had the child, and was too much excited to make the information against Langfitt. Was that a sufficient justification in this case? If it was, then Dietz is not liable, and the plaintiff cannot recover in this suit." This plainly left it to be inferred by the jury, that if they should think that it was not, the plaintiff might recover. This was entirely a new ground of recovery, regardless of everything but the question of the sufficiency of the reason for the non-appearance of the father to prosecute for the killing of his child. This endangered the defendant by a consideration entirely outside of the case.

If it might not have misled the jury to this extent, it could hardly have failed to have led them to believe that Dietz was not a proper party to procure a warrant for what appeared to be a palpable felony. It must have been an oversight in the hurry of trial, which led the learned judge to make a question of the right of any citizen to procure a warrant where there was every reason to believe that a high crime had been committed. It was the duty of any and every citizen. This assignment of error is also sustained.

The 4th assignment is also to a portion of the charge, as follows: "If you think he (Dietz) was actuated by malice *or* want of probable cause, then the plaintiff is entitled to recover such an amount as you deem proper."

Passing by the unbounded latitude given the jury on the subject

[Dietz *v.* Langfitt.]

of damages, which we disapprove, the error in what the learned judge deemed essential to be proved in this action, will claim attention here.    It is the rule of the text-books, and settled by a uniformity of decision, in which there is no break, that a plaintiff in an action for malicious prosecution, must establish *both malice and want of probable cause* against the defendant.    Saunders on Plead. and Ev., vol. 2, p. 332, says: "This is most essential proof, and a failure in it would entitle the defendant to a verdict." For this he cites many authorities, and among them Coke Litt. 161, n. 4.    "Though the plaintiff should prove malice," says the same author, at same page, "yet if he failed to prove want of probable cause for the proceedings he would not succeed," and many authorities are cited for this.    This is our own rule, and is to be found in most of our books of reports.

The learned judge, however, charged that malice *or* want of probable cause was sufficient to entitle the plaintiff to recover. This was equivalent to instructing the jury, that malice of itself without the ingredient of want of probable cause, or *e converso*, want of probable cause without malice, would equally well support the action.    That is to say, the one or the other, or either, would sustain it.    Whether this was a lapse of tongue or pen we know not; but as it is in the charge returned with the record, we must presume it to have been given to the jury as it there appears.    It was an undoubted and damaging error.    The jury should, instead, have been instructed that malice AND want of probable cause must concur and be shown to entitle the plaintiff to a verdict.    While malice may be inferred, sometimes from want of probable cause, where there is nothing to rebut the inference, still it is the inference of a fact, and this illustrates the error noticed in the rejection of the testimony offered to rebut the inference of malice to be drawn of want of probable cause, by throwing out the bill by the grand jury.    The jury should have been instructed that where there is probable cause it is not of the slightest consequence whether the prosecutor be actuated by malice or not.    Park, J., in Mitchell *v.* Jenkins, 5 B. & Ald. 588, said: "If there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable."    If this were not so, the evil spirit of the prosecutor might redeem the evil act of the criminal.

This error is also sustained.

So we think the 5th assignment of error is also sustained.    The learned judge charged that, "it is not necessary that he (the defendant) should have malice towards the particular party, but malice is a disregard of what a man owes to society."

This shed not a ray of light on the question of malice as applicable to the issue trying.    Elementary writers, to be sure, have divided malice into two kinds: malice in law, and malice in fact. The former is understood to be ill-will generally; the latter, *malus*

[Dietz v. Langfitt.]

*animus* directing the party from improper motives to do a wrong act intentionally towards the plaintiff. It must culminate in a specific act towards him, or it is harmless as to him. The charge, however, it seems to us, reached beyond this in its terms to the extent of ' allowing the jury, if they chose, to assess damages against the defendant on account of general malice without reference to its exercise against the plaintiff. We say this may have been the effect of the language used, although doubtless not intended, but it was manifestly deficient in perspicuity and thus may have misled the jury. This has often been held a sufficient ground for the reversal of a judgment.

We feel obliged also to sustain the 6th assignment of error. It is assigned upon that portion of the charge wherein it was said, " If you think the conduct of Dietz was unwarranted; that he had not probable cause; that he was actuated by malice; or, if without malice, without cause or justification, then Dietz is to blame, and should respond in damages."

This is a repetition of the error noticed in the 4th assignment, which claimed that the charge sanctioned a recovery if there was malice, without regard to the essential of want of probable cause, or for a want of probable cause, if there was malice. The notice of that error is sufficient for this. That was error, and so is this.

The question of what is probable cause, and whether it exists in the proof, if believed, is a question of law for the court; whether the proof establishes it, is for the jury: Fisher *v.* Forrester, 9 Casey 501. Here the court gave no instruction to the jury whether there was probable cause or not, but left that question, as well as the question of the proof of the fact, to the jury, without the assistance which the law imposes upon the court; and thus the whole case was thrown upon the jury. If there ever was a case in which it was the duty of a court to declare the law, it was here. Here was a homicide; scarcely by misadventure; certainly not so when the prosecution was instituted, committed in open day, in a broad, straight street, and without excuse at first, and at last the only excuse the perpetrator gave, was that he kept his eyes straight ahead while driving and drove over the child without seeing it. If there was not probable cause for a prosecution for murder or manslaughter here, and so to be pronounced by the court, there never will be again. The court erred in not so pronouncing.

These views sufficiently show that this judgment must be reversed.

Judgment reversed, and *venire facias de novo* awarded.