## John B. Ruffner *v.* Hugh A. Hooks, Appellant.

*Malicious prosecution—Probable cause—Malice.*

In order to maintain an action for malicious prosecution it must appear that the prosecution was instituted without probable cause and that the defendant was actuated by malice.

*Malicious prosecution—Probable cause as defined—Malice.*

Where a probable or reasonable cause exists, no malice, however distinctly proved, will make defendant liable. Where by the plaintiff's own testimony he may have been guilty of manslaughter and, if the testimony of others be true, may have been guilty of murder, the law will require no person to pay damages for instituting a prosecution therefor, no matter how malicious the motive prompting it. In such a case the question should be disposed of by the court and not left to the jury.

Argued May 11, 1896. Appeal, No. 24, April T., 1896, by defendant, from judgment of C. P. Armstrong Co., March T., 1892, No. 344, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for malicious prosecution. Before RAYBURN, P. J. Verdict for plaintiff for $200.

The following facts are stated from the opinion of the Superior Court:

On Sunday, September 26, 1866, a young man named Shields A. Rosensteel, about seventeen years of age, went upon the premises of Christopher Ruffner, father of the plaintiff, and was taking chestnuts from a tree near the Ruffner dwelling, whereupon the plaintiff, then a lad of twelve or thirteen years, remonstrated with Rosensteel and forbade him taking the chestnuts; a dispute followed, and stones were thrown, one of which struck Rosensteel on the neck and felled him to the ground, where he died within a few minutes. The next day, William M. Rosensteel, father of the deceased, went to Ruffner's, and after talking the matter over with the plaintiff's father, concluded he would not begin a criminal prosecution, and took his boy's remains away. There the matter was allowed to rest until October 31, 1891, over twenty-five years, when William M. Rosensteel, made information against the plaintiff, charging him with the murder of Shields A. Rosensteel, upon which the plaintiff was held for trial under bail until December 9, 1891, when the indictment against him was ignored by the grand jury; and on the 18th of February following, the present action for malicious prosecution was commenced. It also appears from the evidence that on May 5, 1890, the plaintiff was appointed guardian of A. M. Meyers and A. G. Meyers, minor children of William Meyers, deceased; and the defendant, having taken stone from the land of these children, the plaintiff in his capacity as guardian brought suit against him and recovered their value; and because of this, the defendant afterward induced William M. Rosensteel to begin the prosecution for murder. Under the evidence the controlling question is whether there was probable cause for the prosecution; the court left that to the jury, and they found a verdict for the plaintiff.

On the trial, the plaintiff was sworn in his own behalf, and testified as follows concerning the death of Rosensteel:

Q. State to the jury, as far as you recollect, what the circumstances of that trouble was. A. Yes, I can. Why, we was— a lot of us boys was together, and there was some boys there taking chestnuts; we told them to leave the chestnuts by the house there and go to the lower tree, and they came down off the trees and commenced to pound us with stones, at one another, so we commenced to throw back; somehow or another, Shields Rosensteel was killed there, whether I did it or not I cannot tell; I did not see the stone strike him.

On cross-examination he testified as follows:

Q. Now how many stones did you throw there that afternoon? A. I don't remember how many I·did. Q. Don't you know you hit him with one? A. No, sir, I don't know it. Q. Do you say you did not hit him? A. No, sir, I don't say so; I say I don't know. Q. Was there anybody else threw stones but you? A. O yes. Q. Who was that? A. These other boys. Q. You say they were all throwing stones? A. Yes, sir. Q. Did you deny killing him at that time? A. No, sir, I think not; I did not know it any more than I do to-day; I said so then and I do now, that I don't know whether I did or did not kill him. Q. How many stones did you throw that day? A. I tell you I don't remember. Q. After you threw the last stone, what occurred? A. I don't know whether I threw the last one that was thrown or not. A. I am speaking of the last time you throwed. Did not Rosensteel drop right down when you throwed the last stone you threw? A. No, sir, I think not. Q. What did you do then? A. He was killed there; I think he was standing yet. Q. How long did he stand afterwards? A. I think quite a while. Q. How long? A. I don't remember how long. Q. Then you don't know whether he stood up at all or not, after you threw the last stone? A. Not just exactly, I can't say whether he did or not. Q. Did any one else throw a stone after you threw the last one? A. I don't know whether they did or not. Q. Now, Mr. Ruffner, what was Rosensteel's position, how was he standing when you hit him? A. O, I don't remember. Q. Whereabouts was he struck with the stone? A. Well, I did not see where the stone struck him; no, I would not go to see; I walked up shortly afterwards

up to where he was. Q. Looked at him? A. Yes, sir. Q. What was his condition? A. He was lying there on the ground. Q. How long after he was struck until you walked up to see him? A. I don't know, it might have been two or three min-utes. Q. Where did the other boys go? A. They run away. Q. They run as soon as the stones begin to fly? A. O yes. Q. How long did the stoning match continue? A. Well not very long, four or five minutes. Q. Did anybody throw a stone at you? A. O yes. Q. Who? A. I don't remember. Q. Did Rosensteel? A. I don't remember whether he did or not, but I think he did.

Witnesses were called on the part of the defendant, one of whom said he was present and saw the plaintiff throw the stone at Rosensteel which hit and killed him, and that Rosensteel did not throw any stones at all. Other witnesses testified to alleged declarations of the plaintiff admitting that he killed Rosensteel.

*Errors assigned*, among others, were to portions of the charge, reciting same; to refusal of binding instructions and to leaving the question of probable cause to the jury.

*M. F. Leason* and *W. L. Peart*, for appellant.—What facts and circumstances amount to probable cause is a question of law: McCarthy v. DeArmit, 99 Pa. 69.

" The question of what is probable cause, and whether it exists in the proof, if believed, is a question of law for the court; whether the proof establishes it is for the jury. Here the court gave no instructions to the jury whether there was probable cause or not, but left that question, as well as the question of the proof of the fact, to the jury, without the assistance which the law imposes upon the court; and thus the whole case was thrown upon the jury: " Dietz v. Langfitt, 63 Pa. 241; Fisher v. Forrester, 33 Pa. 501; Mahaffey v. Byers, 151 Pa. 96; Bei-hofer v. Loeffert, 159 Pa. 365.

Where the evidence on the part of the plaintiff shows prob-able cause the court should direct a verdict for the defendant: Sutton v. Anderson, 103 Pa. 151; Bernar v. Dunlap, 94 Pa 329.

As all homicides are presumably unlawful the fact itself is probable cause for proceeding against the perpetrator: Dietz v. Langfitt, 63 Pa. 239.

282     RUFFNER *v.* HOOKS, Appellant.

Arguments—Opinion of the Court.     [2 Super. Ct.

Where all the elements necessary to constitute the crime charged are proven, that constitutes probable cause and the verdict must be for the defendant: Sutton v. Anderson, 103 Pa. 151; Gilliford v. Windel, 108 Pa. 142; Steimling v. Bower, 156 Pa. 408.

Where there is probable cause it is not of the slightest consequence what the motives of the defendant were; whether he was actuated by malice or not. The verdict must be for the defendant: Dietz v. Langfitt, 63 Pa. 240; Bernar v. Dunlap, 94 Pa. 329; Emerson v. Cochran, 111 Pa. 622; Kramer v. Stock, 10 Watts, 118; McClafferty v. Philp, 151 Pa. 86; Beihofer v. Loeffert, 159 Pa. 374.

*W. D. Patton*, with him *Floy C. Jones*, for appellee.

OPINION BY SMITH, J., July 16, 1896:

This action of trespass was brought to recover damages from the defendant on the ground that he instigated a malicious prosecution against the plaintiff. In order to maintain the action it must appear that the prosecution was instituted without probable cause and that the defendant was actuated by malice. These are essential and must coexist. Probable cause is defined to be: "A reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense." STERRETT, C. J., in McClafferty v. Philp, 151 Pa. 90. Other definitions are given in the books, and though differently worded are substantially the same as the above. The essential element is a reasonable ground for belief of guilt.

"Malice" has been defined to be: "The doing a wrongful act intentionally without just cause or excuse:" 14 Am. & Eng. Ency. of Law, 5. And considered as an element in a malicious prosecution it is said: "By the term 'malice' is meant any indirect motive of wrong. It may be any motive other than that of simply instituting a prosecution for the purpose of bringing a person to justice:" 14 Am. & Eng. Ency. of Law, 22. It is the evil intention with which an act is done.

That the motive of the defendant in this case in procuring the prosecution of the plaintiff was purely malicious can hardly be gainsaid; that he was at all prompted with a desire to vin-

dicate the law or promote the public welfare, was not pretended; and if the decision of the case depended upon the question of malice simply, there would be no hesitation about its disposition.

The facts of the case, as disclosed by the testimony, are remarkable, concerning both the plaintiff and the defendant.

(The court here recited the facts as set out in the statement of facts.)

From all the testimony the fact that the plaintiff caused the death of Rosensteel might fairly be found and a conviction therefor sustained. It is not necessary however for us to pass upon that in this case. Our inquiry is whether probable cause for the prosecution was disproved by the plaintiff. The defendant's belief of the plaintiff's guilt is not denied, and upon an examination of the evidence we find nothing which would justify its denial. According to the testimony he was told by the father of Rosensteel before the prosecution was begun that the plaintiff killed young Rosensteel, and the defendant was evidently acquainted with the facts bearing most strongly against the plaintiff, before the latter's arrest. There is neither evidence nor pretense that the defendant sought to coerce the plaintiff into paying money, or to yield any right or privilege, through the prosecution; his sole motive was one of revenge, and therefore the cases holding that, where prosecutions have been commenced for the purpose of gain, the plaintiff in an action for damages therefor need not prove malice or want of probable cause, do not apply here.

The discharge or acquittal of the plaintiff ordinarily casts the burden of proof on the defendant to show that there was probable cause. But it is well settled that this rule has no application in cases where the plaintiff's own testimony shows its existence. Unfortunately for the plaintiff, in this case his own testimony not only shows probable but actual cause for a prosecution against him. He admits that young Rosensteel was killed by being struck with a stone, that he threw stones at Rosensteel, one of which may have struck and killed him; and viewing his testimony as a whole, it cannot be said, as matter of law, that the killing was justifiable or excusable. By his own testimony he may have been guilty of manslaughter, and if the testimony of the other witnesses be true, it may have been

murder.   Under this state of facts the law will require no person to pay damages for instituting a prosecution, no matter how malicious the motive prompting it.   "If this were not so, the evil spirit of the prosecution might redeem the evil act of the criminal," and grave crimes often go unpunished.   It has been repeatedly decided that if there be reasonable or probable cause no malice, however distinctly proved, will make the defendant liable: Dietz v. Langfitt, 63 Pa. 234; McCarthy v. De Armit, 99 Pa. 63; Gilliford v. Windel, 108 Pa. 142; Emerson v. Cochran, 111 Pa. 619; McCafferty v. Philp, 151 Pa. 86.   Furthermore it has been said by our Supreme Court that all homicides are presumably unlawful, and therefore the fact that one has been committed is of itself probable cause for proceeding against the perpetrator, to ascertain whether there was guilt in it or not: Dietz v. Langfitt, 63 Pa. 239.   And where the plaintiff's own testimony shows probable cause it is the duty of the court to dispose of the case: Bernar v. Dunlap, 94 Pa. 329; McCarthy v. De Armit, 99 Pa. 63; Sutton v. Anderson, 103 Pa. 151; Emerson v. Cochran, 111 Pa. 619; Sloan v. Schomaker, 136 Pa. 382; Cooper v. Hart & Co., 147 Pa. 594; Nachtman v. Hammer, 155 Pa. 200; Sleimling v. Bower, 156 Pa. 408; Mitchell v. Logan, 172 Pa. 349.

However reprehensible the motive of the defendant may have been in this case, the plaintiff's regrettable connection with the transaction that caused the death of Shields A. Rosensteel, and the defendant's knowledge of it before instituting the prosecution, bars a recovery against him.

As these views are decisive of the case on its merits, it is unnecessary to consider the assignments of error specifically.

The judgment is reversed.