## Werner v. Bowers, Appellant.

Argued April 26, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*John H. Wilson,* and *M. M. Edmundson,* for appellant.—Testimony of circumstances surrounding the institution of the proceedings for malicious prosecution are admissible to controvert evidence of malice. Swartz v. Bortree, 253 Pa, 304; Grohmann v. Kirschman, 168 Pa. 203,

*F. A. Ammon,* for appellee, cited: Davis v. Morrison, 82 Superior Ct. 537; Serlich v. Stern, 80 Pa. Superior Ct. 199; Prough v. Entriken, 11 Pa. 85; Schofield v. Ferrers, 47 Pa. 197; Schmidt v. Weidman, 63 Pa. 178.

OPINION BY CUNNINGHAM, J., July 12, 1928:

Plaintiff, having been acquitted in the Court of Quarter Sessions of Allegheny County upon an indictment charging him with the larceny of certain household goods and claiming that the prosecution out of which such indictment grew had been instituted against him maliciously and without probable cause by the defendant, brought his action for damages in the Common Pleas and recovered a verdict of $1,000, upon which judgment was entered after defendant's motions for a new trial and for judgment in his favor n. o. v. had been overruled. The errors assigned by defendant in support of his appeal from that judgment are the rejection by the learned trial judge of several offers of evidence and the overruling of his motion for a new trial or for judgment n. o. v. This was not a case for binding instructions, particularly as there was some evidence for plaintiff, though vigorously denied by defendant and his counsel, that demands had been made for the payment of a designated sum of money in settlement of the criminal case. This issue and others arising under the evidence were necessarily for the jury. Defendant's motion for judgment n. o. v. was properly denied; the third and that portion of the fourth assignment relating to this subject are overruled. The first and second assignments, based upon the sustaining of plaintiff's objections to certain offers of evidence made on behalf of defendant and that portion of the fourth relating to the refusal of a new trial require consideration.

A summary of the material facts appearing from the record is essential to the disposition of these assignments. J. D. Bowers, the defendant in this action

and the appellant herein, is a retail shoe merchant living in Crafton, Allegheny County, Pa. He was the owner of a dwelling-house in that vicinity which he leased to J. F. Finn and which was occupied by Finn and Beatrice Fitzgerald. The rent having been in arrears for several months Bowers placed the matter of its collection in the hands of A. C. McMillen, a justice of the peace in Carnegie, and a landlord's warrant was placed in the hands of Harry Keisling, a constable attached to his office. Keisling levied upon and appraised the household goods on the leased premises and advertised them for sale, posting sale bills on the door and elsewhere. The sale was adjourned several times but was finally fixed for April 11, 1924. About five o'clock on the morning of that day Bowers was notified by R. H. Kelly, who lived next to the house occupied by Finn, that his tenants were removing the goods from the premises. Bowers communicated this information to the constable, Keisling, and went at once to the house. Upon his arrival he found the plaintiff in this case, Edward C. A. Werner, (who owns a warehouse in Carrick some ten miles distant from Crafton, but also in Allegheny County, and operates trucks and moving vans) at the premises with a large truck, into which part of the goods had been loaded by him and his employes. Werner's name and place of business were painted on the van in large letters. Beatrice Fitzgerald admitted that she had arranged with Werner the night before to get the goods early in the morning and place them in his warehouse, and that they were trying to get them out of the house although she knew they had been levied upon and advertised for sale. She stated further that the sale bill was not on the house that morning; that she had arranged with Werner to come early so that she could get to her work; and that she had not told him that the goods were under levy. Bowers' testimony relative to the events which transpired upon his ar-

rival at the premises reads: "I notified Mr. Edward Werner that the goods were under levy and that I was the owner of the house; and he asked me for my papers. I said, 'I never had any papers; but,' I said, 'a notice was posted on this telephone pole and on the door'; and I showed him the door which had four corners of the paper still on, and the tacks in, but the notice had been torn out. Q. State whether or not you pointed out to him your tenant, Mr. Finn? A. Yes; he was standing in the door, and I said, 'That is the man that rented this house and there is arrearage for his rent.'"

Constable Keisling, accompanied by a policeman in uniform, George Weiss, arrived at the premises shortly after Bowers. Referring to these men Bowers further testified: "They came in about five minutes after that, and the constable, Mr. Keisling, notified Mr. Ed. Werner that these goods were levied on; and he said 'Where is your paper?' Mr. Keisling went to get his papers out, reached in here, and Mr. Werner grabbed him by the lapel of his coat and reached his fist to strike him, and Mr. Weiss, the policeman, jumped in between them; and while this scuffle was going on somebody jumped on the truck and drove off." The testimony of the constable and policeman fully corroborated Bowers' account of the circumstances under which the goods were removed. Werner testified that, while the goods were being loaded, Bowers came up and said, "Those goods are levied on"; that he had seen no indication on the premises that the goods were under levy and replied, "You have to show me your credentials first; I am hired to do this moving and that is what I am here for." His testimony continues: "We went on finished loading, and when about tying up the back end of the van I saw a plain-clothes man coming with an officer; he came up there and said, 'Those goods are levied on—' ...... I told him to show the papers. He told me the goods were levied

on, and 1 told him, 'All right; show me the papers.' Q. Did he produce any? A. No, sir. Q. What else happened, if anything? A. I don't know—I was chewing the rag back and forth with him and he had a wallet in his hand fumbling around, and I said to my brother, 'Get on the truck and drive it out; we can't stay here all day.' ''

After an unsuccessful attempt on the part of Bowers and the officers to follow the truck Bowers went back to his store. It is significant to note at this point that Bowers returned to his place of business without evidencing any disposition or intention to institute any kind of proceedings, civil or criminal, against Werner. At the store he learned that the justice of the peace, McMillen, had "left word to come to his office." His testimony with respect to what was done when he went to the office in response to the request reads: ''Q. When you got to his office, did the squire write out an information against Mr. Werner? A. I [he] did. Q. And requested you to sign it? A. Yes. Q. Which you did? A. Yes, sir. Q. And on that information Mr. Werner was arrested and tried in court? A. Yes, sir. Q. And acquitted? A. Yes, sir.'' The general principles of law applicable to the disposition of actions for an alleged malicious prosecution are clearly stated by Mr. Justice STERRETT in McClafferty v. Philp, 151 Pa. 86: ''It was incumbent on the plaintiff to show not only that there was want of probable cause for the prosecution, but also that there was malice on the part of the prosecutor. Want of probable cause and malice must concur. While the former is evidence of malice, proper to be submitted to the jury, it does not establish legal malice to be declared by the court. Malice may be inferred from the want of probable cause, but if there be probable cause, it matters not that the prosecutor was actuated by malice. Probable cause is generally defined to be a reasonable ground of suspicion, sup-

ported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.''

The jury however is not required to draw an inference of malice merely because they may find a want of probable cause. Even if there was no probable cause for the prosecution but it also appeared that there was in fact no wrongful motive, an action for malicious prosecution could not be sustained: Madison v. Pa. R. R. Co., 147 Pa. 509; 18 R. C. L. 31, Sec. 17. In addition to proving want of probable cause and malice plaintiff has the burden of showing that the defendant was responsible for the institution or continuance of the original proceedings complained. of and that they have terminated in plaintiff's favor: 18 R. C. L., p. 17, Sec. 7, and cases there cited. The verdict of acquittal received in evidence was sufficient evidence of the successful termination of the criminal proceedings, and, standing alone and unexplained, would raise a presumption of want of probable cause from which, in the absence of rebutting evidence, an inference of malice might be drawn: Madison v. Pa. R. R. Co., supra. An examination of the entire record forcefully suggests the thought that one of the issues of fact for the jury was whether the criminal proceedings were really instituted or continued by Bowers or whether the magistrate, in whose hands had been placed the matter of the collection of the rent in arrears, instituted them of his own motion. The offer of evidence, the exclusion of which is complained of under the first assignment of error, had, as we view the case, a direct bearing upon this question . Assuming that plaintiff has been injured and that the prosecution was unwarranted, who was at fault? The idea of instituting some kind of proceedings against Werner for his acts in removing the property after distinct notice that it had been levied upon and was about to be sold seems to have been McMillen's. As

already noted, Bowers did not go to McMillen's office to institute or to consult with him relative to the institution of proceedings—McMillen sent for Bowers. At that time it was not known whether the goods had been taken out of the county and there were circumstances from which a jury might find that McMillen, or any ordinarily prudent man, would be justified in believing that it was the purpose of the occupants of the leased premises to secrete, or otherwise dispose of, the property, with intent to prevent it from being sold under the distress. Removal out of the county, or secretion within, would make all parties knowingly concerned guilty of a misdemeanor under the Act of June 23, 1885, P. L. 136, (supplementing Sec. 130 of the Penal Code), as amended by the Act of April 22, 1903, P. L. 242. Both the learned trial judge and counsel for plaintiff seem to have conceived the offer now under consideration to have been one to prove the advice of the magistrate in lieu of the advice of counsel. It was objected to as incompetent, irrelevant and immaterial because it was not advice of counsel. If the purpose of the offer had been to negative malice by showing that Bowers had sought out the magistrate and after submitting the facts to him had been advised that they were sufficient to sustain a prosecution, the ruling would have been correct under the decision of our Supreme Court in Brobst v. Ruff, 100 Pa. 91. In that case the defendant offered to show that he stated to the magistrate, before whom the prosecution was about to be instituted, the facts as he had heard them and was advised by him that they were sufficient to warrant a criminal prosecution. In affirming the ruling of the court below rejecting this offer Mr. Justice MERCUR said: "When a prosecutor fully and fairly submits to his counsel learned in the law all the facts which he knows are capable of proof, and is advised that they are sufficient to sustain a prosecution, and, acting in good faith on that opinion, does institute the

prosecution, he is not liable to an action for malicious prosecution, although the opinion be erroneous. Shall the advice of a committing magistrate have the same effect? We think not. Justices of the peace are not required to be learned in the law. In fact, generally through the state they are not. They are not qualified by a course of study to give advice on questions of law. They do not pursue it as a profession. They are not charged with the duty of advising any person to commence a prosecution. They ought not to act as attorney or agent for one in regard to a prosecution he is about to institute before them. Their duties are judicial; they may in the discharge thereof reduce the substance of the complaint to writing, in the form of an information of the prosecutor, then, they judicially determine whether the facts therein averred, be sufficient to justify the issuing of a warrant. An educated business man may be much better qualified, than many inexperienced justices of the peace, to advise as to the law; yet I am not aware that the advice of such a person has ever been held to protect against damages for a malicious prosecution." See also Beihofer v. Loeffert et al., 159 Pa. 374.

We however do not so understand this offer. It reads: "We propose to prove by the witness on the stand that he is a justice of the peace, and had charge of directing the constable in making the distraint and sale of the goods in controversy, and that after he was advised by the constable that the goods had been carried away by the plaintiff, Werner, that he called the defendant, Bowers, into his office and prepared an information and had him sign it." It was in effect an offer to prove that the witness had taken the initiative in the institution of the prosecution and had called Bowers to his office merely for the purpose of having him sign the information which the witness had drawn. This information, whether it was intended to charge the crime of larceny or a misdemeanor under the Act

of 1903, was badly drawn. When it reached the district attorney's office a bill charging larceny was framed upon it. It is doubtful under the evidence whether Bowers ever intended to charge Werner with the crime of larceny. Upon cross-examination he testified: "Q. Mr. Bowers, you knew when you made this information, on the same day, what it contained? A. I read part of it. I don't know I knew what it contained; I am no attorney. Q. You knew you were charging Edward Werner with stealing, with larceny? A. I can't say I knew that, no. Q. What did you sign the information for? A. Because I had faith in Squire McMillen doing the right thing. He had been in the thing. ........ Q. But you did think it was all right to make a criminal information? A. I didn't do that. ...... Q. You knew when you got in court you were charging him with larceny? A. After it came up in open court I found out the grand jury had made the wrong kind of bill. ...... Q. To sustain that charge of stealing. Wasn't that in it? Didn't you know you were charging the man with being a thief? A. No. Q. Yet you were a witness, swearing against him? A. I knew we were charging him with taking levied-on goods. Q. And you only realized when you got in criminal court you were charging Werner with being a thief? A. I knew the grand jury gave us that kind of bill; I did not know that was what we were to get in.'' In view of the evident purpose of the offer and in the light of all the circumstances a majority of the members of this court think the testimony offered was admissible on the issue of fact to which we have referred.

The second assignment is based upon the sustaining of an objection to defendant's offer to prove by M. M. Edmundson, Esq., one of his attorneys, the circumstances under which the verdict of acquittal was rendered. It reads: "Defendant proposes to prove by the witness on the stand that he is a member of the

Allegheny County bar, and as such, as private counsel for the prosecutor in the case of Commonwealth v. Werner assisted the district attorney in the trial of that case; to prove by him that no record was made of the charge of the trial judge to the jury, Judge COHEN; and that the trial court directed the jury to return a verdict of not guilty, for the reason that the bill of indictment charged a felony while the information warranted only a charge of misdemeanor. This for the purpose of rebutting any inference of want of probable cause established by the offer of the verdict of not guilty."

In Auer v. Mauser, 6 Pa. Superior Ct. 618, it was contended that the criminal proceedings had been terminated by the ignoring of the indictment by the grand jury and the discharge of the defendants. The prosecutors, defendants in the action for a malicious prosecution, in order to meet the effect of this finding of the grand jury called the district attorney, who testified, under objection, that the indictment was laid before the grand jury earlier than the day for which the witnesses for the Commonwealth had been subpoenaed; that but one witness had been examined; and that, rather than hold the jury over, he concluded to let the bill be ignored. On this branch of the case this court said: "Whether the circumstances under which the bill was ignored rebutted the presumption of want of probable cause raised by the record, was for the jury to determine under the evidence. The record, and the manner in which the finding of the jury was brought about, were evidence on this question. But the record of the court of quarter sessions, like that of other courts, imports verity, and cannot be impeached or contradicted by parol evidence except for fraud, or, perhaps, plain mistake: County v. Boyd, 113 Pa. 52. But the testimony did not contradict the record; it was designed to rebut a presump-

tion ordinarily deduced therefrom in these cases, and it was admissible for that purpose: Thorne v. Insurance Co., 80 Pa. 15; McClafferty v. Philp, 151 Pa. 86; Dietz v. Langfitt, 63 Pa. 234. A discharge or an acquittal casts upon the defendant, in an action for malicious prosecution, the burden of showing probable cause, unless that appears from the plaintiff's testimony: Ritter v. Ewing, 174 Pa. 342; Ruffner v. Hooks, 2 Pa. Superior Ct. 278." Here, as there; the offer was not to contradict the record in any way but merely to show, in an effort to rebut the presumption of want of probable cause arising from its rendition, the manner in which the verdict of acquittal was brought about. For the reasons stated in the case just cited we think this testimony should have been received. The conclusions we have reached require us to sustain the first and second assignments and direct a retrial of the case.

The judgment is reversed with a venire.